## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Real property commonly known as 130 Sunridge Avenue, Camillus, New York 13031,<br><br>                    Defendant. | Civil Action No.:   5:24-cv-548 (GTS/ML) |

## <u>VERIFIED COMPLAINT FOR FORFEITURE *IN REM*</u>

The United States of America (the "Plaintiff") brings this verified complaint for forfeiture *in rem* against the above-captioned real property and alleges as follows:

### NATURE OF THE ACTION

This action *in rem* is brought against the above-captioned property pursuant to Title 21, United States Code, Section 881(a)(6) as the proceeds of offenses in violation of Title 21, United States Code, Sections 841 and 846 (drug distribution and conspiracy to distribute drugs), and pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in offenses in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) (concealment money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity).  The matter is also brought pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

### FORFEITURE AUTHORITY

Section 881(a)(6) provides for the forfeiture of:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title.

21 U.S.C. § 881(a)(6).

Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture of: "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

## THE PARTIES

1.      The Plaintiff is the United States of America.

2.      The Defendant is real property commonly known as 130 Sunridge Avenue, Camillus, New York, 13031, ("the Defendant Real Property"), and more particularly described as follows:

> ALL THAT TRACT OF PARCEL OF LAND, situated in the Town of Camillus, County of Onondaga, State of New York, being known and described as Lot No. 32 of Section One, Westridge Heights, as shown on a map of said Section One, Westridge Heights, filed in the Onondaga County Clerk's Office on October 26, 1961, as Map No. 4405.
>
> BEING THE SAME PREMISES conveyed to RL Properties 1981, LLC by Trustee's Deed dated May 8, 2008 and recorded May 14, 2008 in the Onondaga County Clerk's Office in Book 5044 of Deeds at page 973.

3.      Pursuant to Title 18, United States Code, Section 985(b)(1)(A), as real property, the Defendant Real Property shall not be seized prior to the entry of an Order of Forfeiture.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355.  Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States."  28 U.S.C. § 1345.  Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."  28 U.S.C. § 1355(a).

5.     This Court has *in rem* jurisdiction over the Defendant Real Property and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A), which provides that a forfeiture action or proceeding "may be brought in…the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."  28 U.S.C. § 1355(b)(1)(A).

6.     Venue is also properly situated in this district pursuant to Title 28, United States Code, Section 1395(b), which provides that "[a] civil proceeding for forfeiture of property may be prosecuted in any district where such property is found."  28 U.S.C. § 1395(b).

## FACTS

7.     Beginning in or about June of 2021, members of the United States Postal Inspection Service ("USPIS"), Homeland Security Investigations ("HSI"), the Internal Revenue Service ("IRS-CI"), and the Syracuse Police Department ("SPD") began an investigation into the trafficking of cocaine involving the shipment of parcels containing cocaine and currency through the United States Postal Service ("USPS") from Puerto Rico to the Syracuse, New York area.

8.     During the course of the investigation, law enforcement seized five (5) parcels containing 2 to 2.5 kilograms of cocaine each, totaling approximately eleven (11) kilograms of cocaine.

9.     Law enforcement observed, but did not seize, several other parcels containing the same characteristics as the parcels that were intercepted.  These packages matched the intercepted packages in handwriting, weight, and packaging.

10.     During the investigation, Alba Berrios ("Berrios") and Ricardo Lane ("Lane") were identified as receiving parcels in Syracuse, New York, from Puerto Rico.  These parcels had similar identifying characteristics as the parcels previously intercepted that were found to contain cocaine.

11.     Extensive surveillance was conducted throughout the course of the investigation. This included the monitoring and tracking of mail parcels as well as surveillance of Berrios and Lane.

12.     During surveillance, neither Berrios nor Lane were observed traveling to a place of employment.  Berrios and Lane were regularly observed operating a 2022 Honda Pilot SE, VIN: 5FNYF6H29NB029841, ("the Honda") and a 2022 Acura MDX, VIN: 5J8YD8H81NL000936, ("the Acura").[1]  During these surveilled trips, they were often observed travelling to different commercial locations in the West Side of Syracuse.  The three locations are known by law enforcement as common meeting spots for narcotics trafficking transactions.  Both Berrios and Lane were observed making hand to hand transactions with individuals that they met at these locations.

---

[1] These two vehicles are among property identified as defendants in civil forfeiture matter, *United States v. $3,849.00 in U.S. Currency, et al.*, 5:24-CV-0318 (GTS/MJK), initiated in the Northern District of New York on March 6, 2024.

4

13.     Investigators conducted delivery surveillance to track mail parcels delivered to the following five (5) separate locations within the City of Syracuse:  (1) 219 xxxx Street, Apt. 1, ("Residence 1"); (2) 300 xxxx Street, Apt. 2,  ("Residence 2"); (3) 317 xxxx Street ("Residence 3); (4) 311 xxxx Street ("Residence 4"); and (5) 111A xxxx Road (the "Berrios/Lane Residence").

14.     All five addresses were associated with Berrios and Lane.

15.     Agents had previously observed Berrios and Lane as they drove the Acura and the Honda to and from these locations.  Both were also observed entering the addresses.

16.     Berrios and Lane regularly parked the Honda and Acura at the Berrios/Lane Residence during the overnight hours, and investigators established that this address was their residence.

17.     On March 8, 2022, a USPIS Inspector reviewed USPS business records and observed that two parcels had been mailed from Puerto Rico to Residence 1 and Residence 2 in Syracuse.

18.     These two parcels shared similar characteristics with the previously intercepted parcels found to contain cocaine.

19.     On March 10, 2022, the same USPIS Inspector observed that a third parcel containing the same characteristics as the intercepted parcels was headed from Puerto Rico for delivery to Residence 3.

20.     On March 11, 2022, investigators conducted surveillance of the delivery of the two parcels identified on March 8, 2022.

21.     At approximately 11:31 a.m. that day, they observed a USPS letter carrier  deliver one parcel to a female residing at Residence 1 ("Person 1").

22.     Person 1, observed driving a green Jeep Grand Cherokee ("Jeep"), had just arrived at Residence 1 prior to delivery of the parcel.

23.     The Honda, registered to Lane, was also observed in the driveway of Residence 1.

24.     Approximately ten minutes after delivery of the parcel, Person 1 and an unidentified man left Residence 1 and retrieved the package.

25.     Person 1 was observed moving the Jeep out of the driveway so that the man could drive the Honda out of the driveway.

26.     The Honda exited the driveway and was observed traveling toward Residence 3.

27.     At approximately 11:51 a.m. that same day, the Acura, registered to Berrios, was observed parked near a door attached to Residence 2.

28.     At 12:33 p.m., the Honda arrived at Residence 2.  Investigators positively identified the driver of the Honda as Lane.

29.     Lane was observed carrying food into Residence 2.  He left Residence 2 shortly thereafter.

30.     At 12:46 p.m., Berrios emerged from Residence 2 and entered the driver's seat of the Acura.  She drove around the area, parking for brief periods of time in seemingly random locations, while repeatedly passing by Residence 2.

31.     At 12:58 p.m., investigators observed a USPS letter carrier deliver the second parcel to Residence 2.

32.     After the second package was delivered, both the Honda and the Acura were observed circling the area surrounding Residence 2.

33.     At approximately 1:04 p.m., investigators observed as Berrios parked the Acura in the vicinity of Residence 2.  She was then observed entering Residence 2.

34.     At approximately 1:20 p.m., Lane was observed parking in the same area where Berrios had parked; however, Lane remained in his vehicle.

35.     At approximately 1:28 p.m., Berrios exited Residence 2.  She was observed standing on the sidewalk looking around the area for an extended period of time, after which she reentered Residence 2.

36.     Shortly after reentering Residence 2, Berrios was again observed leaving the property.  On this occasion she was visibly concealing something beneath her oversized, puffy jacket as she walked to the Honda and entered the passenger seat.  After Berrios entered the Honda, Lane drove the vehicle to Residence 1.

37.     Both Berrios and Lane remained at Residence 1 for a short period of time.  They were then observed as they drove back to the area where Berrios had left the Acura.  Berrios exited the Honda and entered the Acura.  Both vehicles then drove away from Residence 2.

38.     On March 29, 2022, the same USPIS Inspector who had identified the parcels delivered on March 11, 2022 observed two additional USPS priority mail parcels mailed from Puerto Rico to Syracuse.  These two parcels were addressed to Residence 1 and Residence 3.

39.     On April 1, 2022, investigators began surveillance of Lane and Berrios prior to the anticipated delivery of the parcel addressed to Residence 1.

40.     The two were observed leaving the Berrios/Lane Residence at approximately 11:30 a.m. in the Acura.  A short time later, they arrived at Residence 1.

41.     After leaving Residence 1, Berrios and Lane drove to Residence 3 in the Acura. They exited the vehicle and began to pick up some trash in front of Residence 3.  After picking up the trash, they reentered the Acura and circled the vicinity of Residence 1.

42.    At approximately 12:21 p.m., a USPS letter carrier delivered the parcel to Residence 1.   Approximately ten minutes later, Berrios and Lane arrived in the Acura.   Berrios was observed entering Residence 1 and remained there for approximately twenty minutes. Attempts to follow the Acura after Berrios and Lane drove away were unsuccessful.

43.    On April 2, 2022, a Task Force Officer conducted surveillance of Residence 3 in anticipation of the delivery of the second parcel identified on March 29, 2022.   The parcel was delivered at approximately 4:16 p.m.

44.    The Jeep, driven by Person 1, was observed parked in the driveway at the time of the parcel's delivery.   Shortly thereafter, the Jeep drove away from Residence 3.

45.    The Task Force Officer then observed the Jeep, the Acura driven by Berrios, and the Honda driven by Lane, depart the vicinity of Residence 3 and arrive at Residence 1.   Both the Acura and Honda departed from Residence 1 shortly thereafter.

46.    On April 7, 2022, federal GPS tracking warrants were issued for the Honda and the Acura.

47.    On  April 8, 2022, a GPS tracking device was installed on the Honda.

48.    On April 12, 2022, a GPS tracking device was installed on the Acura.

49.    The tracking data obtained from the GPS affixed to the Acura shows that the vehicle travelled towards New York City on April 21, 2022.   The GPS data further shows that the Acura stopped at two residences in Queens and a commercial shopping area in the Bronx that day.   The tracking data shows that the Acura remained in these New York City boroughs for approximately four hours before returning to Syracuse at approximately 1:00 a.m. on the following day.

50.     Law enforcement surveilled the Acura as it returned to Syracuse in the early hours of April 22, 2022.  The vehicle first stopped at an address previously frequented by Lane before travelling back to the Berrios/Lane Residence, where it remained parked for the rest of the night.

51.     On April 24, 2022, the USPIS Inspector was notified of a parcel mailed from Puerto Rico to Residence 4.

52.     On April 26, 2022, law enforcement established surveillance of Residence 4.

53.     At approximately 8:56 a.m., the TFO observed the Acura depart the Berrios/Lane Residence.  The vehicle was driven by Lane, and Berrios was observed sitting on the passenger side.  The vehicle travelled directly to Residence 4 where it briefly stopped.  The Acura was then observed departing shortly thereafter.

54.     The parcel was delivered to Residence 4 at approximately 9:38 a.m.  Three minutes later, the Acura returned to Residence 4.  Lane was observed exiting the vehicle and entering Residence 4.

55.     Berrios then drove the Acura away from Residence 4 and began to drive around the West Side of Syracuse.  She travelled in the proximity of Residence 4 without stopping at any location for any significant amount of time.

56.     At approximately 10:08 a.m., Lane exited Residence 4 and Berrios drove the Acura back to Residence 4.  Lane placed a bag in the trunk of the Acura and got into the vehicle.  Berrios and Lane then drove to an address on West Onondaga Boulevard.

57.     The Acura stopped briefly at the West Onondaga Boulevard address, after which it was driven back to the Berrios/Lane Residence, arriving at 10:27 a.m.

58.     The USPIS Inspector surveilling the Berrios/Lane Residence observed Berrios and Lane walking from the Acura to the front door of the residence, both carrying bags from the vehicle.

59.     On July 11, 2022, the USPIS Inspector was notified of two parcels mailed from San Juan, Puerto Rico destined for Residences 1 and 4.  Both parcels were packaged in a manner consistent with the packaging of the other parcels observed and intercepted during the investigation.

60.     It was determined that the parcel headed for Residence 4 was delivered before surveillance could be established.

61.     On July 12, 2022, law enforcement established surveillance of the Berrios/Lane Residence and of Residence 1 prior to the delivery of the second package.

62.     At approximately 11:27 a.m. that day, a USPS letter carrier delivered the parcel to Residence 1.   At approximately 12:00 p.m., Lane was observed departing the Berrios/Lane Residence driving the Acura.

63.     When Lane arrived at Residence 1 at 12:10 p.m., he was observed speaking with Person 1 from the driver's window of the Acura.  Shortly thereafter, he exited the vehicle and entered Residence 1.  At approximately 12:32 p.m., Lane exited Residence 1 and got into the Acura.  He pulled out of the driveway to allow Person 1 to back out in the Jeep and pull in front of him.

64.     Law enforcement observed the Acura as it followed the Jeep to a parking lot located on West Onondaga Street in Syracuse.  The Jeep was observed by the SPD to have broken rear glass and the driver had failed to signal upon turning into the parking lot.   As the SPD pulled into

the parking lot, the two vehicles separated.  The SPD activated their emergency lights and pulled the Jeep over.

65.     Person 1 was driving the Jeep when it was pulled over.  The vehicle was also occupied by another adult female and a child.

66.     Upon determining that the vehicle registration was suspended, that Person 1 had a suspended license, and that the adult female passenger of the vehicle did not have a valid license, officers conducted a vehicle inventory search.

67.     Two brick-like objects of compressed white powder, consistent in appearance with cocaine, were observed in a gift bag in the back seat of the Jeep.  A field-test of the substance yielded a positive result for the presence of cocaine.

68.     Lane was stopped by the SPD as he parked in a section of the parking lot on West Onondaga Street.  SPD officers advised Lane that he was travelling too closely behind the Jeep, and that the tinting on the side windows of the vehicle was too obscuring.

69.     Lane appeared to be smoking something in a rolling paper that smelled of burning marijuana.  He stated that he had "just started to smoke weed" and told officers that he would "put out his cigar."  Lane advised that he had a bag of "weed" in the center console of the Acura.

70.     Officers observed Lane's bloodshot eyes, tired demeanor, low resting eyelids, and slow responses.  Lane stated that it was because his girlfriend, Berrios, had just given birth to their son earlier that morning.

71.     A Standardized Field Sobriety Test was conducted, and it was determined that Lane had been operating the Acura under the influence of drugs.

72.     When Lane was booked, five oxycodone pills were found in his front right pocket.

73.     Lane was advised of his Miranda rights, stated that he understood, and agreed to speak with without a lawyer present.

74.     During Lane's interview, he stated that he knew law enforcement had been following him, and that he had seen law enforcement following him.

75.     He stated that he had come directly from the hospital, where he had spent the previous night.

76.     He denied any affiliation with Person 1 and denied being at Person 1's residence prior to his stop by the SPD.

77.     Lane stated that he resided at the West Onondaga Street Apartment but was staying with his sister at the Berrios/Lane Residence.

78.     When asked for consent to search the West Onondaga Street Apartment, Lane stated that the apartment was his mother's residence and said that she would have to provide consent.

79.     Lane repeatedly told law enforcement to "just take me to jail and charge me with whatever you have."

80.     Lane was arrested and taken to the Onondaga County Justice Center.

81.     The Acura was seized and taken into the SPD's custody.

82.     Pursuant to an inventory search of the Acura, a black Apple iPhone was found in the center console.  Lane claimed that the iPhone belonged to him.  In plain view, officers observed incoming calls to the phone from "Alex pr."

83.     The USPIS Inspector reviewed USPS business records and found that there had been nine USPS priority mail parcels mailed from Puerto Rico to Residence 1 since April of 2021. These parcels all shared the following characteristics: (1) they were all mailed using USPS priority

mail service; (2) they were mailed in large USPS flat rate mailing boxes; (3) the parcels all weighed between six and nine pounds; and (4) they were all mailed from San Juan, Puerto Rico, or surrounding areas.

84.     The USPIS Inspector further found that four USPS priority mail parcels had been mailed from Puerto Rico to Residence 3, sharing the following characteristics:  (1) they were mailed using USPS priority mail service; (2) they all weighed between seven and nine pounds; and (3) they were all mailed from San Juan, Puerto Rico, or surrounding areas.  Three of the four parcels were mailed in USPS large flat rate mailing boxes.

85.     Crest Acura, located in Syracuse, New York, confirmed that the Acura was purchased with cash and the four following bank checks:  (1) a $52,000 bank check from Empower Federal Credit Union, written by Lane; (2) a $9,000 bank check from Empower Federal Credit Union; (3) a $9,000 bank check from Bank of America; and (4) a $9,000 bank check from SEFCU.

86.     On July 19, 2022, the Onondaga County Sheriff's Office provided the SPD with phone calls made by Lane while in custody on July 12, 2022 and July 13, 2022.  Most of the calls made by Lane were with a woman believed to be Berrios.  In these calls, Lane advises the woman of his arrest, informs her of the police stop of Person 1, and instructs her to remove what law enforcement believed to be contraband and his vehicle from the Berrios/Lane Residence.  In later recordings, the woman acknowledges that the tasks had been completed.

87.     On July 21, 2022, law enforcement received a federal search and seizure warrant for the Acura, the Honda, and the Berrios/Lane Residence.

88.     The Acura was seized from the SPD and placed into federal custody.

89.     At approximately 12:30 p.m. that day, the search warrant was executed by HSI, the SPD, USPS, and the Internal Revenue Service ("IRS") at the Berrios/Lane Residence.  The

Berrios/Lane Residence was unoccupied at the time of the execution of the search and seizure warrant, and law enforcement entered without incident.

90.     The following three vehicles were found in the garage and seized: (1) a 2022 Yamaha Raptor 700 Sport ATV,  VIN: 5Y4AM74E7NA101455 (registered to Lane), (2)  a 2020 KTM 690 Enduro Motorcycle, VIN: VBKLEV400LM798856 (registered to Lane), and (3) a 2018 KTM 690 Duke Motorcycle, VIN: VBKLDV40XJM714493 (registered to Berrios).[2]

91.     $3,849.00 in U.S. Currency was located inside a bedroom closet in the Berrios/Lane Residence.[3]

92.     During the execution of the search and seizure warrant at the Berrios/Lane Residence, law enforcement also found and seized the following items:  (1) one iPhone located inside the coat closet in the entry hallway; and (2) miscellaneous documents found in the dining room.

93.     Law enforcement learned that Berrios and Lane were temporarily residing at the TruHotel located in Liverpool, New York, and were driving a silver 2021 Chevrolet Traverse ("Chevrolet") that was rented from Avis/Budget by Lane's mother.

94.     On July 22, 2022, the SPD located the Honda parked in a driveway of a residence in Syracuse, New York, identified as the residence of Hector Santa ("Santa"), an associate of Berrios and Lane.  When law enforcement questioned the occupant of the residence, they denied knowledge of the Honda's owner and claimed that they did not know why it was in their driveway. The Honda was seized and taken into federal custody.

---

[2] These three vehicles are identified as defendants in civil forfeiture matter, *United States v. $3,849.00 in U.S. Currency, et al.*, 5:24-CV-0318 (GTS/MJK).

[3] This currency is identified as a defendant in civil forfeiture matter, *United States v. $3,849.00 in U.S. Currency, et al.*, 5:24-CV-0318 (GTS/MJK).

95.     On July 22, 2022, law enforcement officers located the Chevrolet in the back parking lot of the TruHotel in Liverpool, New York.

96.     Surveillance was established at the TruHotel.  Berrios and Lane were observed exiting the hotel with luggage and were apprehended by law enforcement.

97.     A hotel room key, later identified by hotel management as the key used to access the room in which Berrios and Lane were staying, was found on Lane's person.

98.     Hotel records showed that the room was rented by Santa.

99.     On July 22, 2022, a federal search warrant was issued for the hotel room.  Inside the room on the side of the bed next to the bathroom wall, law enforcement officers found a black backpack containing the $33,000.00 in U.S. Currency[4] bound in rubber bands.

100.    Records show that on February 14, 2022, Lane paid $19,052 for Honda in the following increments: (1) $6,000.00 in cash;  (2) $7,500.00 in the form of a bank check from SEFCU; and (3) $5,552.00 in the form of an official check from Empower Federal Credit Union.

101.    The remaining balance on the Honda was paid for with the trade-in of a 2019 Honda Pilot, for which Lane received a $32,000.00 credit.

102.    Lane had informed the Honda dealership that he was employed as a construction worker but failed to provide a W-2 or any 1099 information.

103.    Law enforcement have been unable to identify any legitimate source of income for Lane.

104.    Between January 4, 2021 and July 9, 2022, Berrios and Lane are believed to have received more than twenty (20) parcels containing over forty (40) kilograms of cocaine.

---

[4] This currency is identified as a defendant in civil forfeiture matter, *United States v. $3,849.00 in U.S. Currency, et al.*, 5:24-CV-0318 (GTS/MJK).

105.     In December 2023, law enforcement downloaded and analyzed the data contents of Person 1's cellular phone.  This phone had been seized during Person 1's arrest on July 12, 2022.

106.     The call log identified numerous calls on dates of parcel deliveries, between Person 1 and a telephone number identified as belonging to Berrios.

107.     Historical call data for the number identified as belonging to Berrios was obtained from the associated cellular carrier.  Analysis of calls made in 2022 identified frequent calls with persons receiving parcels on Lane and Berrios' behalf (besides Person 1) with timeframes prior to, during, and after delivery.

108.     In March of 2024, a USPIS Inspector reviewed USPS business records associated with the four suspicious parcels cited above, which were shipped from Puerto Rico to Syracuse, New York between March 5, 2022, and April 1, 2022.  These records were compared to business records obtained by HSI from Charter Communications. The records indicated that the delivery status of these parcels was queried by an Internet Protocol ("IP") address that was associated with the Berrios/Lane Residence.

### Purchase of the Defendant Real Property

109.     On March 25, 2024, law enforcement met with the prior owner of the Defendant Real Property, (the "Prior Owner"), regarding the sale of the property to Lane.

110.     The Prior Owner stated that while he was renovating the Defendant Real Property in or around May or June of 2022, Lane had approached him to discuss the purchase of the Defendant Real Property.

111.     The Prior Owner agreed to sell the property for $195,000.  He further agreed, at Lane's request, to hold the mortgage on the property himself.

112.   The Prior Owner stated that Lane provided him with $10,000 in cash as a down payment and said that the closing occurred on July 11, 2022.

113.   The Prior Owner stated that Lane's monthly payment, approximately $1,900, was paid in cash every month between August 2022 and November 2023.

114.   The Prior Owner said that the Defendant Real Property was not move-in ready when purchased by Lane, adding that it needed a kitchen, two bathrooms, gutters, interior doors, and trim.   He further noted that there were construction people present at the Defendant Real Property between July 2022 and November 2023.

115.   The Prior Owner stated that Lane moved into the Defendant Real Property in November 2023.

116.   In the middle of December 2023, Lane paid the Prior Owner $160,000 in cash to satisfy the mortgage, advising that he had received an inheritance from his late father. [5] The Prior Owner stated that this money was paid to him in regular white envelopes without any bank markings or bank straps and consisted primarily of $50 and $100 bills.

117.   The Prior Owner explained that Lane owed $165,000 to satisfy the mortgage, but the Prior Owner agreed to accept $160,000 because of issues that had arisen during Lane's renovation of the Defendant Real Property.

---

[5] Records show that Lane's father, Eric Lane, passed away in May 2022.  Records filed with the Onondaga County Surrogate's Court also show that on May 23, 2022, Lane submitted an "Affidavit in Relation to Settlement of Estate under Article 13, SCPA" in connection with his deceased father's estate.  In this form, Lane identified Eric Lane as the intestate decedent, and identified the distributees as himself, his sister, and his mother.  Lane also identified the total value of his father's estate as $23,523.89, distributed among three accounts.

118.    Records filed with the Onondaga County Clerk show that the Prior Owner sold the Defendant Real Property to "RL Properties 1981 LLC" on July 18, 2022 for a sale price of $195,000.

119.    Agents learned that RL Properties 1981 LLC is solely owned by Lane.  Public records on the New York State Division of Corporations website show that RL Properties 1981 LLC's service of process address matches the residential address of one of Lane's family members.

120.    On August 25, 2022, Lane executed a Quitclaim Deed transferring the title of the Defendant Real Property from RL Properties 1981, LLC to 130 Sunridge LLC for $1.00 in consideration.   New York State Taxation and Finance Form RP-5217-PDF filed in connection with this transfer shows that Lane signed on behalf of both the seller and the buyer.

121.    Public Records on the New York State Division of Corporations website show that 130 Sunridge LLC was formed on July 22, 2022.

122.    The numerous steps Lane took to attenuate the ownership of the Defendant Real Property and the source of the funds used the pay for the Defendant Real Property shows an intent to conceal the source of the funds as the proceeds of drug trafficking.

### **Criminal Histories**

123.    Berrios' prior criminal history includes a conviction in 2002 in the Northern District of New York in *United States v. Santos-Prado et al.*, criminal case number 5:01-cr-00258 (NAM), for offenses in violation of Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance).

124.    Lane's prior criminal history includes a 2007 conviction for offenses in violation of Title 21, United States Code, Sections 841 and 846, (conspiracy to distribute and possess with

the intent to distribute cocaine and cocaine base) in *United States v. Vega, et al.*, criminal case number 5:05-cr-204 (DNH).

125.    Both Berrios and Lane were indicted on December 7, 2023 in the Northern District of New York in *United States v. Ricardo Lane and Alba Berrios*, criminal case number 5:23-cr-498 (GTS) for offenses in violation of Title 21, United States Code, Sections 841(a)(1) and 846, (conspiracy to distribute and possess with intent to distribute controlled substances).

## CONCLUSION

126.    The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, the Plaintiff, the United States of America, respectfully requests that the Court:

(1)    Issue a Notice of Complaint for Forfeiture Against Real Property and Summons, in the form submitted with this Complaint;

(2)    Direct any person having any claim to the Defendant Real Property to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3)    Enter judgment declaring the Defendant Real Property to be forfeited and condemned to the use and benefit of the United States; and

(4)    Award such other and further relief to the United States as it deems proper and just.

Dated: April 16, 2024

CARLA B. FREEDMAN
United States Attorney

By:    */s/ Elizabeth A. Conger*

Elizabeth A. Conger
Assistant United States Attorney
Bar Roll No. 520872

VERIFICATION

STATE OF NEW YORK      )
                       )  ss:
COUNTY OF ONONDAGA      )


Michael DeStefano, being duly sworn, deposes and states:

I am a Special Agent with the United States Homeland Security Investigations (HSI).  I have read the foregoing Complaint for Forfeiture *in Rem* and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this 16 day of April, 2024.

 

Michael DeStefano, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this   16   day of April, 2024.

ERIN GRACE HYATT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HY6295050
Qualified in Onondaga County
My Commission Expires 12-23-2025

Notary Public

21